IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH THORN, : | |
| : | Case No. 4:CV-06-0016 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| JOSEPH SMITH, Warden, TROY : | (Judge McClure) |
| WILLIAMSON, DAVE MOFFAT, : | |
| D. SCOTT DODRILL & : | |
| HARLEY G. LAPPIN : | |
| : | |
| Defendants. : | |

**O R D E R**

May 23, 2006

**BACKGROUND:**

On January 4, 2006, plaintiff Joseph Thorn, proceeding pro se, commenced the instant Bivens action in the United States District Court for the Middle District of Pennsylvania. As part of his complaint, Thorn asserts that the crowded housing conditions at the Federal Prison Camp in Lewisburg, and the camp's planned expansion to house more inmates, amount to cruel and unusual punishment under the Eighth Amendment of the United States Constitution. The complaint and motion for a temporary restraining order and preliminary injunction filed on January 4, 2006, were largely identical to documents he filed in an action he commenced in

1

2005; an action which was ultimately dismissed by this court for his failure to exhaust administrative remedies. Thorn v. Smith, No. 4:05-CV-0166 (M.D. Pa. July 29, 2005) (McClure, J.).

On February 2, 2006, before Smith filed a brief in opposition, Thorn filed a document we construed as a motion for leave to file an amended complaint with four new defendants. On February 14, 2006, we granted plaintiff leave to file an amended complaint with new defendants. On March 6, 2006, we timely received plaintiff's amended complaint and supporting memorandum of law. The amended complaint added defendants Troy Williamson, Dave Moffat, D. Scott Dodrill, and Harley G. Lappin. Thorn's amended complaint, largely identical to his previously filed complaints, sought a temporary restraining order and a preliminary injunction.

On March 7, 2006, we denied Thorn's request for a TRO, dismissed the portion of his complaint referencing criminal prosecution, and ordered service of the amended complaint on the new defendants. On April 17, 2006 the defendants filed a brief in opposition to plaintiff's request for a preliminary injunction. After being granted an extension of time, the defendants had until May 12, 2006, to file a response to the amended complaint. On May 12, 2006, the government filed a motion to dismiss or, in the alternative, for summary judgment. The government has not yet filed a brief in support. Also on or about May 12, 2006, Thorn filed a

"Motion to Reject Defendant's Second Response to Plaintiff's Complaint and Request for Preliminary Injunction" and an accompanying brief in support. The government has not yet filed a brief in response. For the following reasons we will deny plaintiff's request for a preliminary injunction and will deny Thorn's motion to preclude the government from filing further responses to his amended complaint, as it is without merit.

**DISCUSSION:**

**I.  RELEVANT LEGAL STANDARD FOR PRELIMINARY INJUNCTION**

A party seeking preliminary injunctive relief must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary injunctive relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." KOS Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" KOS Pharmaceuticals, Inc., 369 F.3d at 708 (quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882

F.2d 797, 800 (3d Cir. 1988)).

The essential factors for granting preliminary injunctive relief are irreparable harm and likelihood of success on the merits; if one of those factors is absent the moving party is not entitled to a preliminary injunction. Int'l Union v. Textron Lycoming Reciprocating Engine Div., 919 F. Supp. 783, 789 (M.D. Pa. 1996); see also Larami Ltd. v. Ohio Art Co., 270 F. Supp. 2d 555, 562 (D.N.J. 2003) (citing Reebok Int'l v. J. Baker, Inc., 32 F.3d 1552, 1555-56 (Fed. Cir. 1994)) (noting that in patent infringement cases the Federal Circuit does not require district courts to analyze all four factors when denying a preliminary injunction because the movant has failed to demonstrate either irreparable harm or a substantial likelihood of success on the merits).

## II. FACTUAL BACKGROUND

Plaintiff has been confined at USP Lewisburg's satellite camp since December 1, 2004, when he transferred from FCI Fort Dix, New Jersey.

On July 12, 2004, before Thorn's arrival to the camp, defendant Dave Moffat issued a memorandum to the inmates at the Lewisburg Camp notifying them that most cubes at the camp would become three man cubes instead of two man

cubes.[1]  At that time the inmates were informed that additional telephones would be added, administration building hours would be extended, and television viewing times would be expanded.  The inmates were informed that because of the increase in prison population visiting procedures might be changed, but that inmates would be given notice to alert their families.  These changes have since been implemented.

From June 29, 2004 to July 1, 2004, the American Correctional Association's (ACA) visiting committee audited USP-Lewisburg.  The government has provided as an exhibit the Visiting Committee Members report and the ACA's February 11, 2005 re-accreditation letter.  The summer 2004 audit noted that the rated capacity of all of USP-Lewisburg was 1,666 and that the population at audit was noncompliant at 1,761.[2]

---

[1]According to Moffat's declaration, submitted as an exhibit to the government's brief in opposition to Thorn's request for a preliminary injunction, the dormitory cubes are open ended with no doors.

[2]Although Thorn directs the court to this statistic, the court is uncertain of its significance as to any current population statistics offered because the conversion to three man cubes was implemented after the audit.  In his response to the government's brief in opposition to his request for a preliminary injunction, Thorn also directs the court to more current BOP website data that indicates the Lewisburg camp's population is more than 700 inmates.  Defendant Moffat stated in his February 10, 2006 declaration that the camp's population was then at 475 inmates.  (Rec. Doc. No. 23, Ex. 1, at 3, ¶ 4.)  At the time of the ACA audit the camp's population was 346.  (Rec. Doc. No. 23, at 9, ¶ b.)

As we noted in the previous paragraph, we are not certain at this stage how to interpret all of these numbers.  It is definitely indicative of a dramatic increase in

Thorn asserts in his supporting memorandum that Lewisburg is a "boiling kettle of hazard." (Rec. Doc. No. 16, at 2.) To support this claim he recites that there has been a thirty man riot and a scabies outbreak within the prison population.

In opposition to Thorn's request for a preliminary injunction the defendants have offered declarations that state that although the prison population has increased there has been not been a significant increase in disciplinary infractions or sanitation problems. Defendants also deny that there has been a riot at Lewisburg since Thorn's arrival. Defendants admit that a small number of inmates infected with "scabies" were transferred into the Lewisburg camp in December 2004. However, Moffat indicates in his declaration that all infected inmates, which numbered fewer than twelve, were treated both by the USP-Lewisburg staff and a contract dermatologist. Moffat also indicates that there have been not been outbreaks among the prison population except that a few of the originally infected inmates were reinfected allegedly due to their failure to use the originally prescribed medicine.

In his response to the government's brief in opposition Thorn pointedly

---

the population of the camp. The question is one of degree. However, we must note that the dormitory style design of the cubes at the camp alleviates some of our concern with overpopulation issues. See Rhodes v. Chapman, 452 U.S. 337, 366 n. 14 (1981).

disputes several of the defendants' statements and asserts that they have made deliberate misrepresentations to the court. In addressing defendants' discussion of the scabies outbreak Thorn states that the outbreak was not caused by inmates transferred in from another facility, because some of the inmates that were infected were self-surrenders. Thorn also states that several inmates were quarantined in November 2005 for scabies, and that therefore outbreaks have been ongoing at the prison.

Thorn also recounts in his response several violent incidents that have recently occurred in the prison. Thorn states that on or about May 2, 2005, inmate Miguel Sanchez was brutally beaten in his sleep. He also notes, without specific details, that another incident occurred in which thirty (30) inmates were involved in a fight on the football field, which guards did not stop for twenty minutes. Thorn also states, again without specific details, that an inmate named Melo "brutally pulverized" an inmate named Sean in the TV room.

Finally, Thorn asserts in his response that he has already suffered an irreparable harm. Thorn concisely asserts that he suffers from "constant mental anguish" as a result of the "diabolical overcrowding of the facility" and the "shortage of Correctional Staff." (Rec. Doc. No. 26, at 7.) He offers no medical evidence in support of his claim of mental anguish.

## III.  THORN'S COMPLAINT/MOTION DO NOT WARRANT A PRELIMINARY INJUNCTION

As we previously noted the granting of preliminary relief is an extraordinary remedy that should be granted in limited circumstances.  <u>KOS Pharmaceuticals, Inc.</u>, 369 F.3d at 708.  For the following reasons we find that this is not one of those limited circumstances.

We agree with the defendants that Thorn has failed to carry his very substantial burden as to any of the elements for granting a preliminary injunction.  Although we do note with concern the discrepancy in the population statistics of the Camp offered to the court, we will not issue a preliminary injunction on that alone.

We agree with the defendants that Thorn has not established a reasonable likelihood of success on the merits, even on the basis of only his allegations.  Furthermore, Thorn has failed to provide support for the claim that he will be irreparably harmed if we do not enter injunctive relief.  Although Thorn conclusory states that he suffers mental anguish as a result of the overcrowding, there is no allegation of Thorn suffering any injury except for this perfunctorily stated case of mental anguish.  Section 1997e(e) of Title 42 of the United States Code provides that "[n]o federal civil action shall be brought by a prisoner confined in a jail,

prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Thorn cannot show any physical injury and therefore any compensatory damage claim for mental anguish is not actionable. Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2001) (claims for compensatory damages for mental anguish without a prior showing of physical injury are barred by the PLRA). This does not bar Thorn from seeking nominal damages or injunctive relief on his mental anguish claim, see Mitchell v. Horn, 318 F.3d 523, 533-534 (3d Cir. 2003), but his claim of anguish at this point is only supported by self-serving conclusory statements which we find do not warrant a hearing and do not support the granting of preliminary injunctive relief.

We agree with the defendants that the reasoning we set forth in our January 6, 2006 order denying Thorn's request for a TRO, i.e., that Thorn had been living in the conditions he complains of for quite some time, is still applicable to our order today. (See Rec. Doc. No. 6, at 5-6); see also Thorn v. Smith, No. 4:05-CV-0166 (M.D. Pa. July 29, 2005) (McClure, J.) (Order Denying TRO, Rec. Doc. No. 8 dated Mar. 8, 2005, slip op. 2-3). There simply is no allegation before us that Thorn has suffered an actual injury, let alone an irreparable injury. Finally, we are reluctant at the preliminary injunctive stage to grant relief that would disrupt the orderly administration of the prison system. As a result both the third and fourth

factors in granting preliminary injunctive relief weigh heavily against Thorn. Under the third factor Thorn has only indicated that he is suffering mental anguish, while that is potentially a harm, the harm from his mental anguish does not outweigh the harm we would cause the defendants if we were to impose injunctive relief that barred the prison from converting the Camps housing to three man cubes. If we were to require that sort of compliance from the prison at this stage it would be extremely costly and burdensome to the already taxed prison system. Such an order would impose serious hardship on the administration of federal prisons throughout the system as large numbers of prisoners would need reassignment. Furthermore granting preliminary injunctive relief that would require any large scale reorganization of the housing at the Lewisburg camp would also not be in the public interest as it would be extremely costly.

    We decline to hold an evidentiary hearing on Thorn's motion for a preliminary injunction because the only harm he has allegedly suffered is mental anguish caused by his fear of attacks from other inmates. Furthermore, although we are concerned about the discrepancy in the exact population statistics for the Lewisburg Camp, our concern does not warrant our holding of an evidentiary hearing at this stage because Thorn cannot show that he is irreparably harmed under any of his allegations.

## IV.  THORN'S MOTION TO PRECLUDE GOVERNMENT FROM FILING FURTHER RESPONSES TO HIS AMENDED COMPLAINT

On or about May 12, 2006, Thorn filed a motion captioned "Plaintiff [sic.] Motion to Reject Defendant's Second Response to Plaintiff's Complaint and Request for Preliminary Injunction" and an accompanying brief in support  (Rec. Doc. Nos. 29 & 30.)  Prior to the filing of the motion and the brief in support Thorn corresponded with the court by letter dated May 8, 2006.  In that letter Thorn indicated that he was concerned that the United States Attorney's office was manipulating the judicial process and should not be allowed to file another response to his amended complaint.

The court is sympathetic to plaintiff's arguments, because as a pro se litigant he is unfamiliar with the technical complexities of civil litigation.  That said, however, the government has yet to file a response to Thorn's amended complaint.  The confusion on Thorn's part is understandable where there are two separate outstanding intertwined issues before the court.  First is Thorn's request for a preliminary injunction.  Second is the underlying complaint.  The government's April 17, 2006 brief in opposition was only related to plaintiff's request for a preliminary injunction.

It is clear from Thorn's brief in support of his motion that he has confused

the deadline dates for these two related issues.  Thorn states "On April 12th, this Honorable Court Grants Defendants Motion for Enlargement of time, which in effect reduced the Governments [sic.] response time from April 28, 2006 to April 17, 2006."  (Rec. Doc. No. 30, at 3, ¶ 9.)  Our April 12, 2006 order extended the government's time to file a "response to the motion for a preliminary injunction" (Rec. Doc. No. 21), and not the time for the government to file its response to the amended complaint which is a different, but obviously closely related, issue in the litigation.  That is why the government requested an extension of time to file a response to the amended complaint, and that request was granted.

On May 12, 2006, the government filed a motion to dismiss or, in the alternative, for summary judgment.  The government still has time to file a brief in support of that motion.

The government has complied with the rules of civil procedure, albeit requesting several extensions, which we have granted.  Therefore, Thorn's motion to preclude the government from filing further responses to the amended complaint is without merit and will be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Thorn's "Motion to Reject Defendant's Second Response to Plaintiff's Complaint and Request for Preliminary Injunction" is denied as it is

without merit.  (Rec. Doc. No. 29.)

    2.    Thorn's request for a preliminary injunction is denied.  (Rec. Doc. No. 15.)

                                                        s/ James F. McClure, Jr.
                                                        James F. McClure, Jr.
                                                        United States District Judge