IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH THORN, : | |
| : | Case No. 4:CV-06-0016 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| JOSEPH SMITH, Warden, TROY : | (Judge McClure) |
| WILLIAMSON, DAVE MOFFAT, : | |
| D. SCOTT DODRILL & : | |
| HARLEY G. LAPPIN : | |
| : | |
| Defendants. : | |

**M E M O R A N D U M**

August 17, 2006

**BACKGROUND:**

On January 4, 2006, plaintiff Joseph Thorn, proceeding pro se, commenced the instant Bivens action in the United States District Court for the Middle District of Pennsylvania. As part of his complaint, Thorn asserts that the crowded housing conditions at the Federal Prison Camp in Lewisburg, and the camp's planned expansion to house more inmates, amount to cruel and unusual punishment under the Eighth Amendment of the United States Constitution. The complaint and motion for a temporary restraining order (TRO) and preliminary injunction filed on January 4, 2006, were largely identical to documents he filed in an action he

1

commenced in 2005, an action which was ultimately dismissed by this court for his failure to exhaust administrative remedies. Thorn v. Smith, No. 4:05-CV-0166 (M.D. Pa. July 29, 2005) (McClure, J.).

On February 14, 2006, we granted plaintiff leave to file an amended complaint with new defendants. On March 6, 2006, we timely received plaintiff's amended complaint and supporting memorandum of law. The amended complaint added defendants Troy Williamson, Dave Moffat, D. Scott Dodrill, and Harley G. Lappin. Thorn's amended complaint, largely identical to his previously filed complaints, sought a temporary restraining order and a preliminary injunction.

On March 7, 2006, we denied Thorn's request for a TRO, dismissed the portion of his complaint referencing criminal prosecution, and ordered service of the amended complaint on the new defendants. On May 23, 2006, we denied plaintiff's request for a preliminary injunction. On May 12, 2006, the government filed a motion to dismiss or, in the alternative, for summary judgment. By order dated June 13, 2006 we provided Thorn an extension of time to file his brief in opposition to the defendants' dispositive motion. On August 14, 2006, Thorn filed his brief in opposition captioned "Plaintiff's Response to the Defendant's Brief in Support of the Motion to Dismiss, or in the Alternative for Summary Judgment."

(Rec. Doc. No. 46.)  For the following reasons we will grant the defendants' motion to dismiss.

**DISCUSSION:**

### I. LEGAL STANDARD

### A.  Judgment on the Pleadings and Failure to Exhaust

The defendants have filed a motion to dismiss or in the alternative a motion for summary judgment.  For the following reasons we will construe the motion, which relies on an exhaustion defense, as a motion for judgment on the pleadings.  In Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit held that when a prisoner fails to exhaust under the PLRA the action should be dismissed without prejudice, and a defendant's motion to dismiss should be treated as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) because failure to exhaust administrative remedies is an affirmative defense under 42 U.S.C. § 1997e(a).  Id. at 223 n.2.

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings.  That rule indicates that when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Fed. R. Civ. P. 12(c).  Defendants have attached to their motion a series of exhibits that the court has

considered. The United States Court of Appeals for the Third Circuit held in Spruill that a court may consider "indisputably authentic documents . . . without converting it to a motion for summary judgment." Spruill, 372 F.3d at 223.

**B. Motion to Dismiss Standard in Evaluating Judgment on Pleadings**

The standard in evaluating a motion for judgment on the pleadings is not materially different from the standard for a motion to dismiss. Id. at 223 n.2. When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In ruling on a motion to dismiss the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. Kost, 1 F.3d at 183. At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint. Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000). A complaint should be dismissed only if the court, from evaluating the allegations in the complaint, is certain that under any set of facts relief cannot be granted. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Markowitz v. Northeast Land, Co., 906

F.2d 100, 103 (3d Cir. 1994).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."  Id. at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  Id. at 327.

## II.  STATEMENT OF RELEVANT FACTS

Thorn has been confined at USP Lewisburg's satellite camp since December 1, 2004.  Thorn's complaints revolve around alleged overcrowding at the satellite camp.

On July 12, 2004, before Thorn's arrival at the camp, defendant Dave Moffat issued a memorandum to the inmates at the Lewisburg Camp notifying them that most cubes at the camp would become three man cubes instead of two man cubes.[1]  At that time the inmates were informed that additional telephones

---

[1] According to Moffat's declaration, submitted as an exhibit to the government's brief in opposition to Thorn's request for a preliminary injunction, the dormitory cubes are open ended with no doors.

would be added, administration building hours would be extended, and television viewing times would be expanded.  The inmates were informed that because of the increase in prison population visiting procedures might be changed, but that inmates would be given notice to alert their families.  These changes have since been implemented.

At the time of the of the American Correctional Association's (ACA's) re-accreditation audit, the population of the Lewisburg Camp was 346 inmates, all housed in two housing units.  Today, 480 inmates are housed in those two housing units.[2]  Although the population has increased, there has not been a significant increase in disciplinary infractions or sanitation problems.  According to defendant Moffat's affidavit, although there have been disagreements and physical altercations between inmates, there has not been a riot while Thorn has been housed at Lewisburg.

In December 2004 a small number of inmates that were transferred to the Lewisburg Camp from another facility were found to have scabies infections.   All

---

[2] An additional 207 inmates assigned to a residential drug treatment program, referred to as RDAP, are housed in a separate facility.  These inmates, in addition to the 480 inmates noted above, account for total inmate statistics on the BOP website.

the infected inmates, fewer than 12, were treated both by the USP Lewisburg Health Services staff and a contract dermatologist. Their clothing issue and mattresses were exchanged, and the situation was quickly resolved. According to Moffat, there have not been any cases of inmates contracting "scabies" since that time.

Safety department staff conduct a weekly tour to inspect all camp facilities to ensure compliance with safety (including fire safety) rules and regulations. Fire drills are conducted on a quarterly basis.

The ACA representatives were permitted unlimited access to the Lewisburg facilities during the June 29, 2004 - July 1, 2004 re-accreditation audit. Both staff and inmates were notified in writing of the opportunity to meet and discuss any concerns with the ACA representatives. Defendant Smith did not receive any monetary bonus for passing the ACA audit, nor did he receive any cash award when the inmate population at the Lewisburg Camp was increased.

The BOP has an administrative remedy procedure with respect to inmate complaints. See 28 C.F.R. § 542.10, et seq. On May 12, 2006, K. Michael Sullivan, BOP attorney, conducted a search of the records to determine whether Thorn had exhausted available administrative remedies regarding the issues he raises in his complaint. This review revealed that Thorn has filed forty-four (44)

administrative grievances regarding issues at FPC-Lewisburg since he arrived there on December 1, 2004. The defendants have characterized thirty-one (31) of the administrative grievances as not pertaining to any of the issues raised in the complaint. The defendants then note that the thirteen (13) remaining grievances plaintiff failed to exhaust available administrative remedies concerning these claims prior to commencing his action on January 4, 2006.

Specifically, on June 9, 2005, Thorn filed an administrative remedy number 379031-R1 to the Northeast Regional Office, instead of filing at the institutional level. In this administrative remedy Thorn alleged that the camp was overcrowded and the issue was "sensitive." On June 10, 2005, the remedy was rejected because the issue was not deemed sensitive and Thorn needed to file his remedy at the institutional level, and because Thorn failed to attach a copy of his informal resolution attempt. Thorn was directed to file at the institutional level. Instead Thorn filed an appeal on June 27, 2005, which was rejected and he was again instructed to file at the institutional level.

On October 20, 2005, Thorn filed administrative remedy number 392292-F1 at the institutional level. In this filing he complained about the noise in the telephone area of his housing unit. On November 7, 2005, he re-filed his remedy with the specific request of a thirty-percent reduction in noise around the inmate

telephones. This remedy request was denied at the institutional level on November 14, 2005 and at the Regional Office level on December 23, 2005. Thorn did not appeal this remedy to the Central Office until January 30, 2006, well after he instituted this action on January 4, 2006. His appeal was denied by the Central Office on February 21, 2006.[3]

## III. THORN FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING HIS COMPLAINT

"[F]ederal prisoners suing under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), must first exhaust inmate grievance procedures"

---

[3]The government has similarly demonstrated that administrative remedy number 392297-F1 in which he alleged there was an unsafe environment at the camp was also untimely appealed by him. The Central Office's final rejection of that remedy did not occur until February 8, 2006, well after he instituted this civil action.

The government has also demonstrated that Thorn's administrative remedy number 392303-F1 which involved the size/capacity of rooms at the prison camp, and health and fire concerns was untimely appealed. The Central Office's final rejection of that remedy, in which they found his appeal untimely, did not occur until February 24, 2006, again after the date he instituted this civil action.

before filing a claim in federal court. Porter v. Nussle, 534 U.S. 516, 524 (2002). The Prisoner Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532.

The Bureau of Prisons has established a multi-tier Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19. The program outlines the steps an inmate must take before fully exhausting his administrative remedies.[4]

---

[4]The program provides that, with certain exceptions, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Next, if informal resolution fails, the inmate must submit to the warden "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20 "calendar days following the date on which the basis for

In Spruill, 372 F.3d at 228-230, the United States Court of Appeals for the Third Circuit held that the exhaustion component of § 1997e includes a procedural default component. The court indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

The exhaustion requirement is not satisfied if an inmate files an action in district court prior to completing the administrative process. See Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (citing Ahmed v. Dragovich, 297 F.3d 201, 209 & n.9 (3d Cir. 2002) & Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000)); see also Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003).

---

the Request occurred." Id. at § 542.14(a). The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond. Id. at § 542.18.

If dissatisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response. Id. at § 542.15(a). If the inmate is not satisfied with the Regional Director's response, that decision may be appealed on the appropriate form (BP-11) to the General Counsel within thirty calendar days from the date the Regional Director signed the response. Id. "Appeal to the General Counsel is the final administrative appeal." Id.

In the instant case Thorn failed to exhaust his administrative remedies prior to filing suit in the district court. Thorn's brief in opposition asserts that he has fully exhausted his claims. However, one of his exhibits demonstrates that his administrative remedy request number 379031 was rejected for being filed at the wrong level, because it was not a sensitive issue, and because he failed to pursue an informal resolution or attach evidence of pursuing an informal resolution. Thorn's second administrative remedy request included in his exhibits relates to administrative remedy request number 376869, which is demanding a change in the inmate visitation schedule. This is a peripheral argument to the relief sought in his complaint, which asserts that the prison overcrowding amounts to cruel and unusual punishment under the Eighth Amendment. Thorn's other exhibits attached to his brief in opposition include administrative remedy requests initiated after the filing of his complaint.

**CONCLUSION:**

Although Thorn has filed numerous administrative remedy requests Thorn failed to exhaust his administrative remedies regarding issues raised in this complaint prior to filing his complaint in the district court. Therefore, in light of

42 U.S.C. § 1997e, <u>Spruill</u>, and <u>Oriakhi</u>, we will dismiss his complaint without prejudice.

<u>s/James F. McClure, Jr.</u>
James F. McClure, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH THORN, : | |
| : | Case No. 4:CV-06-0016 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| JOSEPH SMITH, Warden, TROY : | (Judge McClure) |
| WILLIAMSON, DAVE MOFFAT, : | |
| D. SCOTT DODRILL & : | |
| HARLEY G. LAPPIN : | |
| : | |
| Defendants. : | |

**O R D E R**

August 17, 2006

For the reasons set forth in the accompanying memorandum:

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT,**

  1.  Defendants' motion to dismiss or, in the alternative, motion for summary judgment is granted, and construed as a motion for judgment on the pleadings. (Rec. Doc. No. 31.)

  2.  Thorn's amended complaint (Rec. Doc. No. 15) is dismissed without prejudice for failure to exhaust his administrative remedies prior to initiating suit in the district court pursuant to 42 U.S.C. § 1997e.

  3.  The clerk is directed to close the case file.

1

4. Any appeal taken from this order would not be in good faith.

<u>s/James F. McClure, Jr.</u>
James F. McClure, Jr.
United States District Judge
